James O. Moore, J.
This is an action instituted against the City of Buffalo for false arrest. The plaintiff, Mitt Bozeman, had for a number of years rented a portion of the premises located at 178 Peach Street in the City of Buffalo which consisted of a garage where he carried on a part-time business as an auto mechanic. For a period of approximately three months prior to May 6, 1966, Bozeman had an arrangement with a man named Peter Rudolph under the terms of which Rudolph kept some tools on the premises and performed mechanical work.
On or about Saturday of May 7, 1966, Bozeman discovered that the premises had been broken into and that certain tools were missing. He called the police to notify them of the burglary *968 and later furnished them with an inventory listing the articles which had been taken. At the same time he notified Rudolph of the break-in. On Sunday May 8, 1966, Rudolph made an oral complaint to the police precinct that Bozeman had stolen some $250 worth of his tools from the garage. On Tuesday May 10, 1966, Rudolph swore to an information charging grand larceny in the second degree before the Warrant Clerk of the city of Buffalo, alleging that “ one John Doe did steal, take and carry away property belonging to complainant valued at $250.00 ”. The information described the tools that were alleged to have been taken and charged that the defendant took the tools from a garage located at 178 Peach Street on May 6,1966, in violation of section 1296 of the Penal Law.
The information contains no description or other means of identifying “ John Doe ”. Upon the basis of the information a warrant was issued over the signature of a Judge of the City Court of Buffalo reciting that an information upon oath had been laid that the crime of grand larceny, second degree, had been committed and accusing “ One John Doe defendant thereof ”. The warrant commanded any peace officer forthwith to arrest the above-named defendant and bring him before the City Court of Buffalo or the nearest and most accessible Magistrate. The reverse side of the warrant is entitled ‘£ The People, etc., on the Complaint of Peter Rudolph ... vs. John Doe ”.
On May 12 the warrant was delivered to the Police Department of the City of Buffalo. On May 18,1966, Bozeman received a telephone call from Precinct 4 advising him that they had apprehended the person who stole the tools and asking him to stop by the precinct. When he arrived at the precinct he was told to wait, and sometime thereafter a detective named Guest advised Bozeman that he had a warrant for his arrest and placed him under arrest. Although Bozeman was not shown the warrant, the officer told him that Rudolph had sworn out a warrant for him for stealing tools.
Bozeman was taken to police headquarters handcuffed, where his fingerprints and a photograph of him were taken. He was confined in a cell for three or four hours and later released on bail. Thereafter he retained an attorney, and a preliminary hearing was held on June 1, 1966, in the City Court of Buffalo, At the hearing Rudolph testified that he had signed the information but that he did not know who had taken the tools. Thereupon the charge was dismissed.
No claim is here advanced that any grounds existed for the arrest of the plaintiff without a warrant, and the defendant relies entirely on the warrant to justify the arrest and detention *969 of the plaintiff.. At the time of the trial the original complainant, Rudolph, was dead and the arresting officer, Guest, had retired and was unavailable as a witness. Detective Charles P. Williams, who was the partner of Guest, the arresting officer, testified that it was the practice of the Police Department in executing John Doe warrants to obtain information from the complainant about the person he was accusing and to seek positive identification either from the complainant or from an eyewitness. The information upon which the warrant is issued is not given to the Police Department but is retained in City Court.
In the case at bar neither the sworn information nor the warrant as originally issued makes any attempt to describe or identify the named defendant, John Doe. The name of the plaintiff, Mitt Bozeman, appears nowhere on either the face of the information or the warrant. On the reverse side of the information, the title has been changed to strike out the words “ John Doe” and insert the words “Mitt Bozeman ”, and the same change has been made in the title appearing on the reverse side of the warrant with the addition of the residence of Bozeman. It is clear from the record in this case that these changes were made subsequent to the arrest. On the reverse side of the warrant under the place provided for memoranda relating to the time of arrest and a description of the person arrested, there appears in longhand the following legend: “ [C]omplainant thinks his business partner may be involved. His name is Mitt Bozeman, 272 Carlton, & his place of business is at 178 Peach.” There is no evidence as to when this handwritten notation was made or who made it. Moreover, it does not appear on the face of the warrant over the Judge’s signature but is found on the reverse side of the warrant in the portion which is set aside for memoranda to be made subsequent to the arrest. No similar legend or statement appears on the information. Therefore, under all of the circumstances, this handwritten notation cannot be deemed a part of the warrant of arrest.
The Fourth Amendment of the Constitution of the United States, as well as section 12 of article I of the Constitution of the State of New York, governs the issuance of warrants for arrest. “ The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to-be searched, and the persons or things to be seized.” (Emphasis supplied.)
*970 It was well established at common law that a warrant which contained neither the name of the defendant nor any description or designation by which he could be lmown and identified as the person against whom process was issued was insufficient, illegal and void. Mead v. Haws (7 Cow. 332 [1827]) and Gurnsey v. Lovell (9 Wend. 319 [1832]) involved actions for false imprisonment instituted by plaintiffs who had been arrested and detained on “ John Doe ” warrants. In both cases the court held that the warrants afforded no defense to the actions despite the circumstance that in each instance the plaintiff was the person actually intended by the complainant to be arrested.
This ancient common-law right protecting the subject from general warrants did not, however, prevent the issuance of a warrant against a party whose name was unknown. In such cases a valid warrant could be issued provided it set forth the best description possible of the person who was to be arrested and that such description was sufficient to indicate clearly the person upon whom the process was to be served by setting forth his appearance, occupation, residence and any other circumstances through which he could be identified. (Commonwealth v. Crotty, 10 Allen [92 Mass.] 403; 1 Chitty Crim. Law, §§ 39, 40.) In section 282 of the Revised Statutes (L. 1830, ch. 320, § 37), the Legislature enacted the predecessor statute to section 152 of the Code of Criminal Procedure for the purpose of authorizing the issuance of warrants against persons whose names were unknown.
The Code of Criminal Procedure (§ 152): “ Name or description of the defendant, in the warrant and statement of the offense. The warrant must specify the name of the defendant, or if it be unknown to the magistrate, the defendant may be designated therein by any name. It must also state an offense in respect to which the magistrate has authority to issue the warrant, and the time of issuing it, and the city, town or village where it is issued, and be signed by the magistrate with his name of office.”
This statute must be afforded a constitutional construction and interpreted in the light of the explicit language of the Constitution, which provides that a warrant must ‘ ‘ particularly ’ ’ describe the person to be seized. In West v. Cabell (153 U. S. 78, 85-86) the Supreme Court of the United States said:
‘ ‘ By the common law, a warrant for the arrest of a person charged with crime must truly name him, or describe him sufficiently to identify him. If it does not, the officer making the arrest is liable to an action for false imprisonment; and if, in *971 attempting to make the arrest, the officer is killed, this is only-manslaughter in the person whose liberty is invaded. * * *
‘‘ The principle of the common law, by which warrants of arrest, in cases criminal or civil,, must specifically name or describe the person to be arrested, has been affirmed in the American constitutions; and by the great weight of authority in this country a warrant that does not do so will not justify the officer making the arrest.” (See, also, United States v. Doe, 127 F. 982; United States v. Swanner, 237 F. Supp. 69; and People ex rel. Livingston v. Wyatt, 186 N. Y. 383.)
In People ex rel. Sampson v. Dunning (113 App. Div. 35, 37) the court said: ‘‘ That the ends of justice may not be defeated the law wisely provides, both in civil and criminal cases, that where the name of a necessary party cannot be ascertained'— where it is, in good faith, unknown — the moving party may designate the defendant, in the summons, and in any other process or proceeding in the action, by a fictitious name, or by as much of his name as is known, adding a description, identifying the person intended. (See Code Civ. P.roc. § 451; Code Crim. Proc. § 152.) While in the latter Code there does not appear to be any provision calling for a description in those words, it is provided that in the warrant it must ‘ specify the name of the defendant, or if it be unknown to the magistrate, the defendant may be designated therein by any name, ’ and to designate is to 1 point out by distinguishing from others; ’ to 1 indicate by description or by something known and determinate ’ (14 Cyc. 229), .so that it would appear that the policy of the law is not satisfied merely by declaring that John Doe or Richard Roe, or both of them, these names being generally recognized as being fictitious, have been guilty of a crime. Good faith and the .spirit of the law alike demand that the parties who are accused of crime, or who are necessary defendants in a civil proceeding, should be pointed out in the papers, if not by their own proper names, then by such descriptions as will enable the parties and the court or magistrate or other officials who may have to do with them, to know who is intended, and this is peculiarly true when the facts and circumstances are such that the accusing party in a criminal proceeding must, of necessity, know the party or parties.” (See, also, People v. Hamm, 9 N Y 2d 5; People ex rel. Travis v. Knott, 204 App. Div. 379.)
It is significant that subdivision (b) of rule 4 of the Federal Rules of Criminal Procedure, which is the Federal counterpart of section 152 of the Code of Criminal Procedure, provides .specifically that if the name of the defendant is unknown the warrant *972 shall set forth “ any name or description by which he cam, be identified with reasonable certainty.” (Emphasis supplied.)
It follows, therefore, that the warrant in the case at har was a nullity and the City Court of Buffalo had no power to issue the warrant since the information failed to identify or otherwise describe the person accused of crime. (Matter of Both, 200 App. Div. 423.)
The defective nature of the “ John Doe ” warrant is no mere technicality since it affects the fundamental right of every citizen to be secure in his person from the oppressive misuse of process. Were the validity of such a warrant to be sustained, a peace officer would be authorized to arrest and intern any citizen without regard to the entire absence of probable cause. It is in effect a general warrant and permits the peace officer to determine in his own unrestrained judgment the person upon whom the process will be excuted. The evil of such process is not eliminated or even mitigated by the prevailing practice of seeking from the complainant an unsworn identification of the person whom he intends to have arrested.
It is true that a police officer is not required to institute an inquiry into the validity of all légal process turned over for execution, and the fact that a warrant was improvidently or erroneously issued does not automatically give rise to a cause of action for false imprisonment. (Nastasi v. State of New York, 275 App. Div. 524; Ford v. State of New York, 21 A D 2d 437.) This principle is founded on the theory that arresting officers and confining authorities are under a duty to execute and comply with the orders of a court of competent jurisdiction. It has no application, however, to process which is not “fair on its face ’ ’ wherein the defective nature of the court order is readily apparent from a reading of the document. In the case at bar the police officer to whom the warrant was delivered could not possibly comply with the court’s direction to arrest one John Doe, and it was readily apparent that the warrant was void on its face. Under these circumstances, it affords no defense to an action for false arrest, and the City of Buffalo is liable for any damages sustained by the plaintiff by virtue of the execution of this warrant.
The court finds that the plaintiff, Mitt Bozeman, sustained direct damages in the amount of $500 arising out of his loss of work and the expense of retaining counsel in City Court. In addition, the plaintiff is entitled to $1,000 damages for the humiliation occasioned by his arrest and confinement. It is directed that a judgment for the plaintiff against the defendant in the amount of $1,500 be entered.