**Andrew POWE, Plaintiff-Appellant,**

v.

**The CITY OF CHICAGO, et al., Defendants-Appellees.**

No. 80–2731.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1981.

Decided Nov. 4, 1981.

Rehearing and Rehearing En Banc Denied Nov. 25, 1981.

---

Shelly Waxman, Shelly, Waxman & Associates, Chicago, Ill., for plaintiff-appellant.

Jerome A. Siegan, Randye A. Kogan, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Senior Circuit Judge, and PELL and BAUER, Circuit Judges.

SWYGERT, Senior Circuit Judge.

Plaintiff-appellant Andrew Powe filed this lawsuit against the City of Chicago and the County of Cook under section 1983, 42 U.S.C. § 1983. The district court granted defendants' motions for summary judgment "as motions for judgment on the pleadings pursuant to F.R.C.P. 12(b)(6)." Powe appealed.

 We note at the outset that because this appeal is from a dismissal of the complaint for failure to state a claim, the sole issue is the sufficiency of the complaint. We must therefore exclude from our discussion facts presented in the plaintiff's and the defendants' briefs that are based upon documents and deposition testimony obtained through discovery, but that are not alleged in the complaint. Rather, our discussion is directed to the allegations that appear in the complaint. See Glaros v. Perse, 628 F.2d 679, 681 (1st Cir. 1980). Naturally, we take these allegations to be true, and view them, together with reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff. See, e. g., Sterling v. Village of Maywood, 579 F.2d 1350, 1351 n.2 (7th Cir. 1978), cert. denied sub nom. Village of Maywood v. Sterling, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); Little v. Walker, 552 F.2d 193, 194 n.2 (7th Cir. 1977), cert. denied sub nom. Walker v. Little, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). As an additional preliminary note, we add, because there was some question about it at oral argument, that the complaint with which we are concerned is the Second Amended Complaint as Amended.[1] This complaint incorporates by reference the complaints that preceded it, that is, the Original Complaint and the First Amended Complaint.

## I.

According to the complaint, in February of 1972 Powe was the victim of an armed robbery committed by one Ernest Brooks, who took, among other things, Powe's wallet containing his identification. Brooks was later arrested for another crime, and, using Powe's stolen identification, he pleaded guilty and was sentenced to two years' probation under the name "Andrew Powe." He then violated probation, and a probation violation arrest warrant was issued, by the Cook County Adult Probation Department, on December 20, 1974, for the arrest of "Andrew Powe, a/k/a Ernest Brooks."[2]

1. At oral argument, counsel for Mr. Powe made several references to the Third Amended Complaint. That complaint is not properly before us. Counsel withdrew it voluntarily before the district court's final decision was rendered. The complaint that the district court dismissed was the Second Amended Complaint as Amended.

2. We feel it necessary to point out that Ernest Brooks is evidently not the real name of Powe's attacker. After the complaint was filed, Powe obtained an arrest record, from defendant City of Chicago, which indicates that the robber's real name is Earl Doty. According to the arrest record, "Ernest Brooks" is simply another of numerous aliases Doty has used when arrested by the Chicago police. Like the alias

This warrant was lodged with the Cook County Sheriff's Fugitive Warrant Section, and was placed as a "stop order" with the Chicago Police Department, "without adequate specificity to identify the intended arrestee." Count I, Paragraph 12.

On November 25, 1975, the real Andrew Powe was stopped by Chicago police for a traffic offense. The police officers made a routine computer check, via police radio, for warrants outstanding against Powe. This check revealed the "Andrew Powe, a/k/a Ernest Brooks" arrest warrant. Powe was accordingly placed under arrest, was booked, fingerprinted and photographed, and spent the night in jail because he was unable to post the required bond until the following day. Powe appeared in court to answer the probation violation charge on December 1, 1975, and he then explained the circumstances to the judge. The case was continued, to permit the prosecutor to investigate. On December 30, 1975, the prosecutor reported to the judge that Powe's story was true. Powe was therefore discharged.

Three months later, on March 8, 1976, Powe was stopped by Chicago police for speeding. Since he was driving on a traffic ticket at the time, he was taken to the Seventh District Station of the Chicago Police Department to post a $25 bond. While he was at the police station, a routine computer check was made for outstanding warrants, as before, and as before the probation violation warrant turned up. Powe was therefore taken to Central Detention Lockup at 11th and State Streets in Chicago, was booked, fingerprinted and photographed, and spent the night in jail. The following day a Cook County Probation Department employee, who had a photograph of the actual probation violator, informed the Chicago police officers at Central Lockup that Powe was not the man sought in the warrant. The Chicago police refused to release him promptly, however, and instead transported him in a squadrol, with his hands cuffed behind him, back to the Seventh District Station. He was not released from custody until "many hours later."

Following the second arrest Powe filed this lawsuit. Thereafter, he was arrested twice more on the same warrant, once in January of 1977 and again on November 5, 1977. In this lawsuit, he seeks damages and injunctive relief under section 1983, and under pendent state counts of negligence and *respondeat superior*, for all four of his arrests, and for his retention in custody by the Chicago police, on the occasion of his second arrest, after they were notified that he was not the man sought under the warrant.

## II.

■ Our task is to determine whether the complaint's allegations, outlined above, suffice to state a cognizable claim for relief against the city and the county under section 1983. Both defendants are municipalities. The Supreme Court set forth the elements of a civil rights claim against a municipality in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[3] Under *Monell*, a section 1983 plaintiff must show (1) that he or she has suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality. *Id.* at 690–91, 98 S.Ct. at 2035–36. Our first question, then, is whether the complaint is adequate to allege an unconstitutional deprivation.

"Andrew Powe," Doty only used the alias "Ernest Brooks" once. It appears that the complaint refers to him as Brooks because the warrant named "Powe" and "Brooks." We refer to him here as Brooks because the complaint does so. That his real name is Earl Doty is not relevant to the issues presented.

3. *Monell* applies in this case even though the suit was filed before the *Monell* decision was handed down. *See, e. g., Sterling v. Village of Maywood*, 579 F.2d 1350, 1356 and n.15 (7th Cir. 1978), *cert. denied sub nom. Village of Maywood v. Sterling*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); *Key v. Rutherford*, 645 F.2d 880, 881 n.1 (10th Cir. 1981); *Heimbach v. Village of Lyons*, 597 F.2d 344, 346 (2d Cir. 1979).

## A. *Deprivation of Liberty*

Powe contends that he was deprived of his liberty without due process of law. The district court, relying on *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), held that the deprivations of his liberty were not unconstitutional. In *Baker*, the Supreme Court found no unconstitutional deprivation of liberty where the plaintiff was arrested pursuant to a valid arrest warrant. The person actually sought under the warrant was the plaintiff's brother, who, having earlier been arrested on narcotics charges and released on bail bond, was being sought at the bondsman's request to revoke his suretyship. It was the plaintiff's name that appeared in the arrest warrant, however, because his brother had obtained his driver's license and had used it at his arrest, booking, and release on bond. The plaintiff was arrested pursuant to the warrant, and was detained by the county sheriff for three days until it was discovered that he was not the person actually sought. The Supreme Court held the deprivation of plaintiff's liberty was not unconstitutional, even though he was innocent, because the plaintiff conceded that both the arrest warrant and the arrest pursuant to the warrant were valid. *Id.* at 143, 99 S.Ct. at 2694.[4]

In the present case, the district court found that the warrant was conceded by all parties to be valid. Were we in accord with this premise, we would agree with the district court's conclusion that the complaint must be dismissed under *Baker*. We are constrained to conclude, however, that the district court's premise was incorrect.

At Count I, Paragraph 12 of the complaint, Powe charges that the warrant was "without adequate specificity to identify the intended arrestee." At Count I, Paragraph 16, Powe charges that when the warrant was reissued after his first arrest, it was "likewise deficient in identifying the person to be arrested." Powe further com-plains that the warrant was issued in his name in spite of the knowledge on the part of the law enforcement agencies of the defendants that Brooks was "a person who employed *several* aliases." Count I, Paragraph 17 (emphasis added). Finally, Powe's challenge to the warrant was reiterated in the last brief he filed with the district court: in his brief in opposition to the defendants' motion for summary judgment (the motion that resulted in the dismissal of the case and the appeal to this court), Powe argued that the unlawful detentions were "caused by the defective warrant.... [T]he defective warrant was the *sina* [sic] *qua non* of Plaintiff's injury." In view of these allegations and arguments, we cannot agree that Powe conceded the validity of the arrest warrant.

█ This court has held that where an arrest is made pursuant to an invalid warrant, *Baker* cannot be applied to preclude the arrestee's claim of an unconstitutional deprivation of liberty. *Murray v. Chicago*, 634 F.2d 365, 367 (7th Cir. 1981). To determine whether *Baker* is applicable here, therefore, we must determine whether Powe's complaint adequately alleges that his arrests were made pursuant to an invalid warrant. Our finding that Powe did not concede the validity of the warrant is not dispositive of this question. The validity of an arrest warrant is a mixed question of law and fact. Thus, while we cannot and do not ignore Powe's contention that the warrant was not valid, the contention is not a "fact" that must be taken as true in judging the sufficiency of his complaint. Rather, we must determine whether Powe's historical-fact allegations, together with reasonable inferences drawn therefrom, support the legal conclusion that the warrant was invalid. We approach this task bearing in mind that Powe's attack on the warrant, in his complaint, is that the warrant was deficient in identifying the person to be arrested.

---

4. Although the principal basis for the Supreme Court's holding was the validity of the warrant, the Court also relied, in part, on the *de minimus* nature of the confinement: he was arrest-ed only once and, on that sole occasion, detained for only "three days over a New Year's weekend ...." *Id.* at 145, 99 S.Ct. at 2695.

The fourth amendment to the Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue, but* upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the *persons* or things *to be seized.*

(Emphasis added.)

■ An arrest warrant that correctly names the person to be arrested generally satisfies the fourth amendment's particularity requirement, and no other description of the arrestee need be included in the warrant. *See Wanger v. Bonner*, 621 F.2d 675, 682 (5th Cir. 1980). On the other hand, as the discussion below will demonstrate, an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to meet the fourth amendment's particularity requirement unless it includes some other description of the intended arrestee that is sufficient to identify him.

The earliest and most important case to discuss the fourth amendment's particularity requirement is *West v. Cabell*, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 (1894). In *West*, a deputy marshal for the Northern District of Texas learned from an informant that James West, "sometimes called Bud West," had killed a man in Arkansas, and had recently moved to Mineral Wells, Texas. The informant also gave the deputy a physical description of James West. The deputy relayed this information to the Commissioner of the United States Circuit Court, who issued a warrant for the arrest of "James West" on suspicion of murder. The warrant included no description of James West. Upon arriving at Mineral Wells, the deputy learned that the only West in the area was Vandy M. West. Vandy resembled the informant's description of James; in addition, the deputy knew (or believed he knew) that " 'in that section of the country it was frequently the case that men were known by other than their correct names, so much so that witness attached but little importance to the name by which a man was called.' " *Id.* at 81, 14 S.Ct. at 753. For these reasons, the deputy arrested Vandy West. Vandy spent three weeks in jail until the informant arrived and announced that Vandy "was not the West who killed Cameron." *Id.* at 79, 14 S.Ct. at 752. Thereafter, Vandy West sued the deputy marshal and the marshal, on breach of bond, alleging he was arrested unconstitutionally.[5] The defendants argued that the arrest of Vandy West was proper because supplementary information implicating him as the person sought (*i. e.*, the residence in Mineral Wells, the physical description, and the likelihood that "Vandy" was a nickname for "James"), although not included in the warrant, was known to the arresting officer. The Supreme Court rejected this argument, insisting instead upon a strict "constitutional requirement of a particular description in the warrant." *Id.* at 88, 14 S.Ct. at 754. More importantly, for purposes of this case, the *West* Court articulated the following rule as the starting point for any consideration of whether an arrest warrant satisfies the fourth amendment's particularity requirement:

> By the common law, a warrant for the arrest of a person charged with crime must *truly name him, or describe him sufficiently to identify him.*
>
> \* \* \* \* \* \*
>
> The principle of the common law, by which warrants of arrest, in cases criminal or civil, must *specifically name or describe the person to be arrested,* has been affirmed in the American constitutions; and by the great weight of authority in this county a warrant that does not do so will not justify the officer making the arrest.

---

5. The jurisdictional basis for the suit was a bond executed by the marshal, "the condition of which was that the marshal, by himself and his deputies, should faithfully perform all the duties of his office, and upon which any person injured by a breach of the condition might maintain an action. Rev.Stat. §§ 783, 784; *Lammon v. Feusier*, 111 U.S. 17, 4 S.Ct. 286, 28 L.Ed. 337." *West*, 153 U.S. at 84–85, 14 S.Ct. at 753.

*Id.* at 85–86, 14 S.Ct. at 753–54. (emphasis added).

The *West* rule, that an arrest warrant must "truly name [the arrestee] or describe him sufficiently to identify him," is today regularly used as the point of reference for adjudging the particularity of a warrant. Not surprisingly, numerous cases invoking *West* concern John Doe warrants, which by their nature never "truly name" the intended arrestee.[6] Thus, for example, the court in *Bozeman v. City of Buffalo*, 62 Misc.2d 967, 310 N.Y.S.2d 814 (Sup.Ct.1969), *aff'd mem.* 34 App.Div.2d 892, 313 N.Y.S.2d 361 (1970), relying on *West*, had no trouble finding a warrant for the arrest of "John Doe," with no other description of the intended arrestee, clearly invalid. Similarly, the court in *People v. Montoya*, 255 Cal.App.2d 137, 63 Cal.Rptr. 73 (1967), invoked *West* to find invalid a warrant for the arrest of "John Doe" which contained only a very generalized description of the intended arrestee. 63 Cal.Rptr. at 78.[7] In *United States v. $1,058.00 in United States Currency*, 210 F.Supp. 45 (W.D.Pa.1962), *aff'd* 323 F.2d 211 (3d Cir. 1963), the John Doe warrant included an adequate physical description of the intended arrestee and, additionally, accurately stated that his nickname was "Piggy." On the basis of *West*, the court upheld the warrant. *Id.* at 49.

A warrant was held invalid, however, in *United States v. Swanner*, 237 F.Supp. 69 (E.D.Tenn.1964), the court again relying on *West*. In *Swanner*, a warrant was issued for "John Doe, alias Bud Ferguson," and contained no other description of the intended arrestee. The court held that because the intended arrestee's real name was Swanner, not Ferguson, no reason for including the alias Ferguson in the warrant was shown, and no other description of the intended arrestee appeared on the warrant, the warrant was invalid. *Id.* at 71–72.[8]

*West* was also invoked in a case not involving a John Doe warrant, *McCoy v. State*, 259 Ark. 607, 535 S.W.2d 439 (1976). In *McCoy*, a warrant was issued for "Robert Curry," although the intended arrestee's true name was Nolan McCoy; but the warrant also indicated McCoy's correct address, and correctly stated his nickname was "Monk." Moreover, at some point before McCoy was arrested, his real name was substituted for the erroneous "Robert Curry" on the warrant. The Arkansas Supreme Court rejected McCoy's attack on the warrant. Relying on *West*, the court concluded that the warrant was valid, notwithstanding any question that might have existed about the arrestee's true name, because the description of the arrestee was sufficient to identify him. 535 S.W.2d at 440.

■ The foregoing cases make clear that *West's* admonition that an arrest warrant must "truly name [the arrestee] or describe him sufficiently to identify him" is applicable to a broad spectrum of cases involving quite different factual settings but containing a crucial common factor. In each case, the law enforcement authorities had probable cause to suspect a particular person of committing a crime, but did not know his name,[9] or were uncertain of his name.[10]

■ The same factor is present in the case now before us. Here, it is clear from

6. The *West* Court itself used the example of John Doe warrants to illustrate the requirement of a description in the warrant where the "true name" of the arrestee could not be given. A John Doe warrant must always include a description, the Court stated, for otherwise it is "in effect a general warrant, upon which any other person might as well [be] arrested, as being included in the warrant." 153 U.S. at 86, 14 S.Ct. at 754.

7. The court upheld a later version of the warrant, however, which was supplemented by the inclusion of a more detailed physical description of the suspect and the correct name, address and description of his accomplice, in whose home he was likely to be found. 63 Cal.Rptr. at 78.

8. The *Montoya* court upheld the arrest, however, on the ground that the arrestee had committed a felony in the officer's presence. *Id.* at 73.

9. *Montoya; $1,058.00 in United States Currency.*

10. *West v. Cabell; McCoy; Swanner.*

the complaint that the authorities had probable cause to believe that the man (allegedly named Ernest Brooks) who was arrested, charged, convicted and sentenced for a crime had violated his probation. It is also clear from the complaint that the authorities were not certain of his name: the first warrant was, allegedly, issued in two names, and the authorities allegedly knew their suspect used "several" aliases. Where the authorities do not know, or are uncertain of the intended arrestee's name, then the name placed on the warrant—be it James West, or John Doe, or John Doe alias Bud Ferguson, or Andrew Powe a/k/a Ernest Brooks—is, to one degree or another, arbitrary. While an arrest warrant may constitutionally use such arbitrary name designations, it may *only* do so if, in addition to the name, it also gives some other description of the intended arrestee that is sufficient to identify him.

■ The description need not be of the intended arrestee's physical appearance, although that is usually the description given. In *McCoy, supra*, the description consisted of the suspect's nickname and his correct address. *See Bozeman, supra*, in which the court stated that a John Doe warrant must contain "the best description possible" of the suspect, which may consist of "his appearance, occupation, residence and any other circumstances through which he could be identified." 310 N.Y.S.2d at 817. But whatever description is given, needless to say, it must be accurate. In *United States v. Swanner, supra*, for example, the erroneous inclusion of "Bud Ferguson" as an alias on the John Doe warrant, where the intended arrestee had never used that name, contributed significantly to the court's holding that the warrant was invalid. *See also Wanger v. Bonner*, 621 F.2d 675 (5th Cir. 1980). In *Wanger*, the arrest warrant correctly named the suspect, but gave an incorrect home address. Knowing the address had a "twenty to twenty-five percent" chance of being wrong, two sheriff's deputies nevertheless attempted to execute the warrant, at the wrong address, at two o'clock in the morning. The Fifth Circuit held such an action unconstitutional, and upheld a jury verdict in favor of the residents of the address against the sheriff for instituting policies which led to the unconstitutional conduct.

■ We do not hold that every arrest is necessarily invalid whenever it incorrectly names the intended arrestee and contains no other description of him. A case may be hypothesized in which the authorities responsible for preparing the warrant have good reason to believe that the name on the warrant is the real name of the intended arrestee, and have no reason to suspect otherwise. Our holding here is not addressed to such a case. In this case our holding is simply that where, as is alleged here, the authorities had reason to suspect that the name placed on the warrant was not the real name of the intended arrestee, then some other description of the intended arrestee, sufficient to identify him, must be included in the warrant.

■ Strict compliance with this rule is essential to preserve the fundamental principle, embodied in the fourth amendment, that "every citizen is entitled to security of his person and property unless and until an *adequate justification* for disturbing that security is shown." Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 411 (1974) (emphasis added). We quite agree with the defendants that the fourth amendment does not guarantee that only the guilty will be arrested; this truism was most recently reiterated by the Supreme Court in *Baker v. McCollan, supra*, 443 U.S. at 145, 99 S.Ct. at 2695. What the fourth amendment does guarantee, however, is that no person shall be arrested unless there is good reason to believe that he or she has committed a particular crime. By the terms of the fourth amendment, an arrest warrant based upon probable cause and "particularly describing ... the person[ ] ... to be seized" is of course sufficient reason to make an arrest, even if the arrestee should later be found innocent. But an arrest warrant that, by way of description, simply gives one or two of several names which, for all the authori-

ties know, the arrestee might or might not be using, does not provide sufficient information on which an arrest may be based. The inclusion of names that might be incorrect, combined with the omission of a specific description of the person sought, create a substantial risk, not simply that an innocent person will be arrested, but that a person to whom not the least suspicion has attached will be arrested. This risk cannot be tolerated under the fourth amendment.[11] It is all the more intolerable because it is avoidable: in Powe's case, for example, the authorities clearly had had sufficient contact with the man who violated probation to be able to describe him in the warrant. The failure to describe him, although the authorities knew there was some uncertainty about his true name, renders the warrant invalid.

We hold, therefore, that the complaint adequately alleges the probation-violation warrant was invalid for failure to satisfy the fourth amendment's particularity requirement. In light of this allegation, the district court's reliance on *Baker v. McCollan, supra,* in dismissing the complaint, was erroneous. As we noted earlier, where an arrest is based on an invalid warrant, *Baker* does not preclude recovery under section 1983 for an unconstitutional

deprivation of liberty. *Murray v. City of Chicago, supra,* 634 F.2d 365 (7th Cir. 1981).[12]

Before we leave this first prong of the *Monell* prima facie case, we must comment on the adequacy of the complaint to allege that Powe's arrests were made pursuant to the allegedly invalid warrant. Powe alleges that at his first arrest he was initially stopped for a traffic offense. He does not contest this initial stop, and nothing in his complaint suggests that it was improper. Nonetheless, it is clear from a fair reading of his complaint that he was taken into custody, after the initial stop, on the basis of the challenged probation-violation warrant. The same is true of Powe's allegations regarding his second arrest. He does not contest his initial stop for speeding, nor does he contest being taken to the police station to post a $25.00 bond. However, as with the first arrest, the complaint makes clear that he was booked and held on bail because of the probation-violation warrant, not because of the traffic violation. We see no inadequacy in the allegations regarding the first two arrests.

However, as to the third and fourth detentions, Powe's allegations, on their face, are problematic. His allegation regarding the third arrest reads, in full:

---

11. By analogy, we note that courts have held search warrants not sufficiently particularized where they created too great a risk of governmental intrusion upon nonsuspects. Thus, in *United States v. Prout,* 526 F.2d 380 (5th Cir. 1976), *cert. denied sub nom. Prout v. United States,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976), the court stated:

 [T]he determining factor as to whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description given is technically accurate in every detail but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and *whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant.*

 *Id.* at 387–88, quoting *United States v. Sklaroff,* 323 F.Supp. 296, 321 (S.D.Fla.1971) (emphasis added).

 This circuit follows the rule articulated above. In *United States v. Hinton,* 219 F.2d 324 (7th Cir. 1955), we held that "a warrant

which describes an entire building when cause is shown for searching only one apartment is void." *Id.* at 326. In *United States v. Higgins,* 428 F.2d 232 (7th Cir. 1970), we held that a search warrant describing the basement of a building was not sufficiently particularized because there were three separate apartments in the basement and there was no probable cause to search two of the apartments. *Id.* at 234–35. *Compare United States v. Gusan,* 549 F.2d 15 (7th Cir.), *cert. denied sub nom. Gusan v. United States,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977) (search warrant upheld despite a minor inaccuracy in the description of the place to be searched because there was no likelihood that the inaccuracy would lead to the search of an innocent or unsuspected person's property).

12. Similarly, defendant City of Chicago's reliance on *Johnson v. City of St. Paul,* 634 F.2d 1146 (8th Cir. 1980), is misplaced. The validity of the warrant in that case, as in *Baker,* was not challenged. *Id.* at 1147 n.4.

On or about January, 1977, after the filing of the original Complaint herein, Plaintiff was unlawfully arrested, incarcerated and detained at the Chicago Police District Station located at 840 E. 75th Street, Chicago, Illinois and was again fingerprinted, photographed and a record made of his arrest.

Count I, Paragraph 24A. The allegation regarding the fourth arrest reads, in full:

On or about November 5, 1977, after the filing of the original Complaint in this case, Plaintiff was unlawfully arrested, incarcerated and detained at the Chicago Police District Station located at 840 E. 75th Street, Chicago, Illinois and was again fingerprinted, photographed and a record made of his arrest.

Count I, Paragraph 24B. Although these paragraphs allege in conclusory fashion that the third and fourth detentions were "unlawful," they contain no mention of any facts or circumstances that render the arrests unlawful. Because Powe's pleadings were drafted by an attorney, we do not look with favor upon these conclusions of law that are not supported by factual allegations. Notwithstanding our misgivings, however, we conclude that the allegations of the third and fourth arrests do state a claim. First, we view them in the light of the detailed allegations of the first two arrests. While we would prefer more precision in the drafting, the most reasonable interpretation is that the third and fourth arrests were "unlawful" because they were made pursuant to the challenged warrant. Second, and of far greater importance, it is quite clear that the defendants have not been prejudiced. They acknowledge in their briefs to this court that the challenged warrant was, indeed, the basis for the third and fourth arrests.[13] In light of these special circumstances, we conclude that the allegations regarding Powe's third and fourth detentions are not fatally insufficient.

In sum, we hold that Powe's complaint adequately alleges that on four occasions he was deprived of his liberty on the basis of a constitutionally defective arrest warrant. The complaint therefore satisfies the first prong of the *Monell* prima facie case.

### B. *Policy*

We now turn to the second prong of the *Monell* prima facie case. The defendants argue that Powe's complaint fails to allege an unconstitutional policy of the city or the county and therefore, under *Monell*, fails to state a claim. We begin our discussion of this argument with a brief examination of *Monell's* requirement of a showing of policy.

 The requirement of a showing of policy stems from the *Monell* Court's explicit rejection of a *respondeat superior* theory in suits against municipal entities under section 1983. This rejection of *respondeat superior* is based upon the principle that a defendant must be somehow at fault in order to be held liable for damages under section 1983. That is, a municipality may be cast in damages only for its own acts or omissions, and a municipality "acts" by establishing or countenancing policies or practices which its employees are expected to follow in performing their duties. This predication of liability upon fault means that when an individual official breaks with official policy, and in doing so violates the constitutional rights of another, then that official, and not the municipality whose policies he breached, should be made to bear the liability. Conversely, when an official performs his duties according to established policies or practices, but in doing so violates another's rights, then it is the municipal entity, which established or perpetuated the practices, that should be held liable.

---

**13.** It appears from these briefs and from Powe's brief to this court that, like the first two arrests, the later arrests were occasioned by initial police contact which was not improper. Apparently, at the third arrest, Powe had gone to a police station to pay a number of outstanding parking tickets. The routine check was made, the probation-violation warrant was discovered, and he was arrested. At the fourth arrest, Powe was initially stopped for not having a Chicago inspection sticker on his car.

With the foregoing in mind, and without wishing to quibble over semantics, we note that the defendants' formulation of the issue—whether the city or the county instituted an "unconstitutional policy"—might lead to some misunderstanding. Under *Monell*, the policy of the municipality is not to be examined, in a vacuum, for unconstitutionality. Rather, under *Monell*, the crucial question is whether the unconstitutional acts complained of were *caused by* a policy or custom of the municipality. *See Monell*, 436 U.S. at 692, 98 S.Ct. at 2036. Thus, that Powe's complaint does not point to a specific, articulated policy of the city or the county is not fatal to his claim. His complaint will withstand dismissal if the facts alleged, together with reasonable inferences to be drawn from them, could lead a reasonable factfinder to conclude that the actions of the county and city employees, by which Powe was unconstitutionally deprived of his liberty, were the product of some policy or custom of the municipal entities. It is that question to which we now turn.

In *Monell*, since the plaintiffs explicitly attacked the municipal department's official policy of forcing pregnant women to take unpaid leaves of absence, the Supreme Court had no occasion to consider when an official policy or custom should be inferred from a complaint's allegations. Cases following *Monell*, however, have considered this question, and these cases suggest that, normally, the mere allegation of a single act of unconstitutional conduct by a municipal employee will not support the inference that such conduct was pursuant to official policies. On the other hand, where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion.

The leading case is *Turpin v. Mailet*, 619 F.2d 196 (2d Cir.), *cert. denied sub nom. Turpin v. West Haven*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). In *Turpin*, the plaintiff was arrested twice. His first arrest, for breach of the peace, stemmed from a scuffle with a police officer in which the plaintiff was injured. The plaintiff successfully sued the arresting officer for using excessive force. Three months after he won the judgment against the officer, the plaintiff was again arrested, for disorderly conduct. He sued the municipality, contending that his second arrest was designed to harass him in retaliation for his suit concerning the first arrest, and that such harassment was condoned and encouraged by the city police department. The defendant city argued that no "policy" within the meaning of *Monell* could be inferred from the isolated fact of the second, allegedly harassing, arrest. The Second Circuit rejected this argument. The court agreed that "a policy could not ordinarily be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force." *Id.* at 202. But, the court held, the plaintiff had alleged "not merely a *first* unlawful arrest, which might properly be dismissible against the City, but a *second* arrest (May 6, 1975) claimed to have been caused by a policy of the City to harass [the plaintiff] in violation of his constitutional rights. Unlike the 'first arrest' cases, which struggle with whether a single episode can suggest a policy, his claims were sufficient to entitle him to a trial." [14] *Ibid.* (emphasis in original).

*Turpin* reflects the prevailing view with respect to allegations of municipal policy in suits under section 1983. The allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality. As this court held in *Sterling v. Village of Maywood*, 579 F.2d 1350 (7th Cir. 1978), *cert. denied sub nom. Village of Maywood v. Sterling*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979), to sue a municipality for the isolated constitutional wrong of one of its employees amounts to invocation of the theory of *respondeat superior*, which was firmly rejected by the Supreme

---

**14.** The court in *Turpin* proceeded to reverse the jury verdict in the plaintiff's favor, however, for lack of sufficient evidence of harassment. *Id.* at 204.

Court in *Monell.* Thus, in *Sterling,* we held that where the plaintiff alleged only that her water supply was wrongfully terminated on a single occasion, she could not maintain her suit against the municipality. *Id.* at 1357. Similarly, in *Walters v. City of Ocean Springs,* 626 F.2d 1317 (5th Cir. 1980), the court held that a section 1983 suit could not be maintained where the plaintiff alleged only a single improper arrest. *See also, e. g., Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir. 1980), *cert. denied sub nom. Rashkind v. Marrero,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) (held, City could not be sued for single incident of unlawful search and seizure).

By contrast, the allegation of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy. In *Glaros v. Perse,* 628 F.2d 679 (1st Cir. 1980), for example, the court strongly suggested that plaintiff's allegation that he was continuously under surveillance by members of the Cambridge Police Department would give sufficient support to his claim of a police department policy of unconstitutional investigation into political groups to entitle him to maintain his suit against the city. *Id.* at 686.[15] And in *Heimbach v. Village of Lyons,* 597 F.2d 344 (2d Cir. 1979), the plaintiffs charged that village authorities had unconstitutionally prevented them from opposing a redevelopment plan, alleging, specifically, that certain plaintiffs were wrongfully evicted from their homes and that the opposition group's leader was illegally arrested (allegedly he was arrested for a supposed misdemeanor under a statute that carried no criminal penalties). These allegations were found sufficient to support their suit against the municipality. *Id.* at 346.

■ In the present case, Powe has alleged that he was the victim of a series of unlawful arrests, each arrest based upon the same, allegedly invalid, warrant. In our view, his allegations are sufficient to raise the inference that the municipal de-

fendants are responsible for the challenged arrests. The complaint indicates that the challenged probation-violation warrant was prepared, promulgated, and executed by various employees of separate departments of the defendants' law enforcement agencies. Assuming the warrant was invalid, its invalidity would lie, as we discussed in part II A above, in the failure of the municipal authorities to include in the warrant an adequate description of the person sought. This failure to describe the arrestee was repeated four times. We find it reasonable to infer that the inadequacy of the description in the warrant was systemic in nature—that is, that it resulted from the procedures followed by the defendants' law enforcement agencies in issuing warrants of the type involved here. Given this reasonable inference, we must conclude that Powe is entitled to maintain his suit against the defendant municipalities. Clearly, under *Monell,* the municipalities must be held liable under section 1983 if the factfinder determines that their procedures led to the issuance of an invalid warrant against Powe, and, thereby, to his unlawful arrests. Given the allegations contained in Powe's complaint, such a conclusion would be entirely permissible. Accordingly, we hold that Powe's complaint satisfies the second prong of the *Monell* prima facie case.

### III. Continued Detention after the Second Arrest

■ We address briefly the district court's holding with respect to Powe's continued detention by the Chicago police for "many hours" after they became aware that he was not the intended arrestee. The district court held that "[a] claim for this deprivation of liberty or due process by the City is not cognizable under *Baker v. McCollan, supra,* if the arrest itself is proper." We have serious reservations about this rationale. The *Baker* Court held that, after a valid arrest pursuant to a valid warrant, the continued detention of the arrestee *until* it was discovered that he was

---

15. The question before the *Glaros* court was whether the plaintiff should have been permitted to amend his complaint to include this allegation.

not the person sought, was perfectly valid, even though such detention lasted several days. Nothing in *Baker* compels the conclusion that the validity of the arrest renders utterly unassailable the continued detention of the arrestee *after* it is discovered that he is not the person sought. We need not and do not decide this issue, however, because we are satisfied that this part of the district court's holding should be affirmed, albeit on different grounds.

Even assuming *arguendo* that the continued detention amounted to a deprivation of liberty without due process of law, Powe may not maintain a suit against the City for the continued detention because his complaint does not adequately allege "policy" within the meaning of *Monell*. The complaint contains no direct allegation that the Chicago Police Department regularly, as a matter of practice, detains arrestees for an unreasonable time after it is clear that there is no longer any cause to hold them. Nor, as we discussed in Part II B, *supra*, can we draw any such inference from the allegation of a single incident of undue detention. *See ante*, at 650–51, and cases cited therein. We conclude that Powe has not made out a claim against the City of Chicago for his continued detention on the occasion of his second arrest.

#### IV. *Attorneys' Fees*

 Finally, Powe has requested attorneys' fees under section 1988, 42 U.S.C. § 1988. He is not entitled to attorneys' fees until he has "prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). Under our holding today, Powe has not prevailed on the merits, but rather is found entitled to present the merits of his claim to a factfinder. Powe is, thus, not entitled to attorneys' fees at this stage of the litigation. *See id.* at 758–59, 100 S.Ct. at 1989–90.

#### V. *Conclusion*

For the reasons stated, we hold that Powe's complaint states a claim for relief against the City of Chicago and the County of Cook for adopting policies or procedures that led to the repeated issuance of a constitutionally defective arrest warrant and, thus, to his unlawful arrests. The dismissal of that portion of his complaint was therefore erroneous. We also hold that Powe has failed to state a claim against the City of Chicago for his continued detention by members of the Chicago Police Department after they were made aware that there was no longer reason to hold him. Finally, we hold that Powe is not entitled to attorneys' fees at this stage of the litigation.

The order of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with the views expressed herein.