K.L., L.F., and R.B., on behalf of themselves and all persons similarly situated, Plaintiffs,

v.

Jim EDGAR, Governor of the State of Illinois, and Ann Patla, Director of the Illinois Department of Mental Health and Developmental Disabilities, Defendants.

No. 92 C 5722.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 12, 1996.

See also, 945 F.Supp. 167.

Steven Ross Gilford, Joseph A. Starkman, Jeffrey W. Sarles, Mayer, Brown & Platt, Chicago, IL, Roger Pascal, Michael Neil Lloyd, Lisa Ann Brown, Schiff, Hardin & Waite, Chicago, IL, Colleen K. Connell, Harvey Michael Grossman, Benjamin S. Wolf, Susan Gail Wishnick, Roger Baldwin Foundation of ACLU, Inc., Chicago, IL, for plaintiffs.

Joel Gerald Chefitz, Timothy J. Patenode, Kenneth Michael Kliebard, Laura A. O'Connell, Jeffrey G. Close, Katten, Muchin & Zavis, Chicago, IL, for Jim Edgar.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are defendants' motions to dismiss plaintiffs' second amended complaint and to strike paragraphs 27, 28, 29, and 30 of the second amended complaint. For the reasons that follow, the court denies defendants' motions.

### A. Motion to dismiss

Defendants have moved to dismiss plaintiffs' second amended complaint, contending that it fails to allege adequately that a system-wide policy of defendants has deprived plaintiffs of a constitutional right, or that the named class representatives have been deprived of a right as a result of a system-wide policy of defendants. Both contentions are meritless.

■ As defendants note, " 'a cause of action will lie only for those injuries caused by faults "systemic in nature." ' " *Strauss v. City of Chicago,* 760 F.2d 765, 770 (7th Cir. 1985) (quoting *Powe v. City of Chicago,* 664 F.2d 639, 651 (7th Cir.1981)). The pattern of misconduct must flow from "a deliberate plan," or at least "deliberate indifference." *See Rizzo v. Goode,* 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976); *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989).[1]

■ Plaintiffs' second amended complaint complies with the foregoing. Plaintiffs allege that they are denied adequate care and treatment "as a result of a *system-wide* failure to provide adequate management of the mental health system, adequate resources, and ade-

quate numbers of trained and qualified staff for its operation." (Second Am. Compl. ¶ 10 (emphasis added).)

Plaintiffs allege that a *"pattern* of abuse and neglect" has existed for many years with defendants' knowledge. (*Id.* ¶ 11 (emphasis added).) Plaintiffs allege that the Department of Mental Health and Developmental Disabilities (DMHDD) "has repeatedly and knowingly ignored professional standards in the design of the institutional system," and that defendants have *"recklessly"* failed to provide necessary resources. (*Id.* ¶¶ 12, 13 (emphasis added).)

Plaintiffs allege that the conditions and practices described in the complaint are *"system-wide,* affecting and originating from every one of the institutions." (*Id.* ¶ 31 (emphasis added).) Finally, plaintiffs allege that defendants "directly participated in the conduct, conditions and practices" alleged in the complaint; or that the "wrongdoers acted under the control and direction of defendants;" or that "defendants knew of such conduct and failed to take corrective action." (*Id.* ¶ 32.) Plaintiffs allege that defendants have acted *"deliberately, recklessly and with deliberate indifference."* (*Id.* (emphasis added).)

The Federal Rules of Civil Procedure require only " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)(2)). "To this end, pleadings are liberally construed and each theory need not be explicitly spelled out, so long as the other side receives notice as to what is at issue in the case." *Bob Willow Motors, Inc. v. General Motors Corp.,* 872 F.2d 788, 791 (7th Cir. 1989) (citing *American Timber & Trading*

---

1. Plaintiffs contend that defendants erroneously suggest that plaintiffs must show that defendants acted with "deliberate indifference" to the plight of plaintiffs. Plaintiffs contend that the correct standard is the "professional judgment" standard of *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), and not the more stringent "deliberate indifference" standard.

The court believes that plaintiffs and defendants are speaking of apples and oranges:

plaintiffs, of the standard governing the underlying constitutional claim, and defendants, of the standard for determining whether a policy or practice of the governmental entity is alleged. *See Harris,* 489 U.S. at 389 n. 8, 109 S.Ct. at 1205 n. 8 (making this distinction). The court finds that it need not decide this disagreement because plaintiffs' allegations meet both standards.

*Co. v. First Nat'l Bank of Oregon,* 690 F.2d 781, 786 (9th Cir.1982)).

Defendants clearly have sufficient notice of what plaintiffs' claim is and the grounds upon which it rests, and what is at issue in the case. Plaintiffs repeatedly allege that the inadequacies in the DMHDD facilities are " 'systemic in nature.' " *Strauss,* 760 F.2d at 770 (quoting *Powe,* 664 F.2d at 639). Plaintiffs also allege that defendants acted deliberately or with deliberate indifference and thereby caused the pattern of abuse and neglect that has existed for years within the DMHDD. These allegations, combined with the other allegations of specific faults in the DMHDD and injuries to plaintiffs, give defendants fair notice of what is at issue in plaintiffs' case. This is particularly true given that the court should liberally construe plaintiffs' complaint. *See Bob Willow Motors,* 872 F.2d at 791.

Moreover, the complaint is replete with allegations regarding the injuries that class plaintiffs have sustained because of defendants' conduct. (*See, e.g.,* Second Am. Compl. ¶¶ 15, 16, 18, 19, 20, 21, 23, 25, 26, 27, 28, 33, and 34.) These allegations, combined with the other allegations regarding the systemic nature of the problems alleged in the complaint, give defendants sufficient notice of the injuries to plaintiffs allegedly caused by defendants.

The complaint also contains numerous allegations regarding injuries suffered by the named class representatives. (*See id.* ¶¶ 16, 20, 21, 23, and 24.) These specific allegations, combined with the other, more general allegations in the complaint, are sufficient to state a claim under 42 U.S.C. § 1983. Furthermore, the representatives' claims appear to be typical of the claims of the rest of the class because all of the claims are based on the same pattern of conduct by defendants and the same legal theory. *See Patrykus v. Gomilla,* 121 F.R.D. 357, 361–62 (N.D.Ill. 1988). Therefore, the named class representatives adequately represent the class.

In sum, defendants' motion effectively asks the court to construe plaintiffs' second amended complaint very narrowly and strictly. That is not what the Federal Rules of Civil Procedure require. Plaintiffs have made a " 'short and plain statement of the claim' " that gives defendants fair notice of the nature of plaintiffs' claim and the issues it raises. No more is necessary at the pleading stage.

Accordingly, the court denies defendants' motion to dismiss plaintiffs' second amended complaint.

## B. *Motion to strike*

Defendants also have moved to strike paragraphs 27 through 29 and paragraph 30 of plaintiffs' second amended complaint. Defendants contend that paragraphs 27 through 29 are the same as those rejected by the court in its September 30, 1996, opinion, *See K.L. v. Edgar,* 941 F.Supp. 706 (N.D.Ill. 1996), and that paragraph 30 is directly contrary to the court's instructions in its September 30, 1996, opinion. The court disagrees.

As defendants correctly note, in its September 30, 1996, opinion, the court held that defendants had no duty to provide mental health services in the community, outside of the state facilities; that the state could not be held liable for harm that could have been averted had it chosen to provide services; and that, when the state discharges a patient from a state facility, it is not liable for any harm that occurs after discharge. (941 F.Supp. at 715–17.) However, in the September 30, 1996, opinion, the court also recognized the numerous Seventh Circuit cases that have held that "a state cannot act to create danger to its citizens or make its citizens more vulnerable to danger." (*Id.* at 716; *see also id.* at 713–15 (discussing those cases).)

The court agrees with plaintiffs that paragraphs 27 through 29 now allege that the state, in some circumstances, acts to create danger to its citizens or make its citizens more vulnerable to danger. Specifically, the complaint now alleges that the state takes affirmative steps during patients' institutionalization to make them worse off and more vulnerable to danger not only while they are institutionalized but also after they are released. The court finds that paragraphs 27 through 29 are consistent with the court's opinion of September 30, 1996.

Defendants also apparently are concerned that to the extent paragraph 30 refers to "conditions and practices ... in the State of Illinois," the paragraph intends to encompass conditions and practices in state-run and private facilities. However, plaintiffs state that the reference to the State of Illinois in paragraph 30 "does not seek to broaden the state's constitutional obligation beyond patients institutionalized in the state's mental health facilities, but simply recognizes the fact that the Governor, as well as the Director of DMHDD, is a defendant in this litigation." (*Id.* at 710.) Moreover, the beginning of paragraph 30 explicitly refers to conditions at DMHDD facilities. Thus, it is clear that this entire paragraph refers only to conditions and practices at DMHDD. Paragraph 30 is not contrary to the court's September 30, 1996, opinion.

However, the court notes that to the extent plaintiffs claim a right to minimally adequate treatment in a minimally adequate setting, that right is limited by the court's September 30, 1996, opinion, and more importantly, by *Youngberg.* As this court noted in its September 30, 1996, opinion, *Youngberg* concerned only a right to training and services necessary to preserve patients' liberty interests in safety and freedom from unnecessary restraints. (*See* 941 F.Supp. at 709-10, 718-19.) The Supreme Court in *Youngberg* held that the due process clause guarantees those in state custody the right to safe conditions of confinement and freedom from undue bodily restraint, and for those who need it, "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Youngberg,* 457 U.S. at 319, 102 S.Ct. at 2459-60.

The court assumes that this is what plaintiffs mean by "minimally adequate services" in a "minimally adequate setting." Thus, paragraphs 27 through 29 and 30 do not contravene the court's September 30, 1996, opinion or *Youngberg.* Nonetheless, the court emphasizes again, as it did in its September 30, 1996, opinion, that plaintiffs do not have a general right to training or services. (*See* 941 F.Supp. at 710.)

With this caveat, the court denies defendant's motion to strike paragraphs 27, 28, 29, and 30 from plaintiff's second amended complaint.