**Ollie Belle ROSS, Individually and as Administrator of the Estate of William Ross, Deceased, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 86 C 5882.**

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1988.

---

Victor Potysman, Forrest Ingram, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. for N.D. Ill., Gillum Ferguson, Asst. U.S. Atty., Jeffrey Colman and Robert Markin, Jenner and Block, Chicago, Ill., for city defendants.

Daniel Field, Waukegan, Ill., for County defendants.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Twelve-year-old William Ross fell from the North Breakwater in Waukegan Harbor into Lake Michigan and was not fished out by the Waukegan Fire Department divers until some twenty minutes later. He died the following day. Ross's mother, Ollie Belle Ross, filed this action individually and as administrator of her son's estate against nine defendants alleging claims under 42 U.S.C. sec. 1983, the Federal Tort Claims Act (FTCA), and Illinois law. Of the original defendants seven remain, including the County of Lake and the City of Waukegan; and all of them have moved to dismiss the plaintiff's amended complaint.

## I. FACTS

At approximately 6:15 in the evening on August 11, 1985, twelve-year-old William Ross fell from the North Breakwater in Waukegan Harbor into Lake Michigan. Within a few moments, Lake County Deputy Sheriff Gordon Johnson arrived on the scene; a few minutes later, a lifeguard and a Waukegan Fire Department lieutenant arrived and prepared to rescue William. Johnson, implementing the County's policy of forbidding unauthorized civilians from attempting water rescues in favor of the Waukegan Fire Department divers (and authorized civilians), prevented them from entering the water. Amended Compl. paras. 20–21, 24, 29. Waukegan police officer Michael Urbancic, also at the scene, "warned the lieutenant "to obey Johnson's orders * * *." Para. 30.

Also within minutes, two certified professional divers came on the scene fully equipped and prepared to attempt to rescue William. Once again Johnson stopped them, apparently waiting for the Waukegan Fire Department divers to arrive. They did. Some twenty minutes after William fell in, they pulled him from the water, barely alive, and rushed him to the hospital; he died the following day.

## II. DISCUSSION

We must decide two principal issues: first, whether the County's policy of preventing unauthorized civilians from attempting water rescues in favor of the Waukegan Fire Department divers can serve as the basis for municipal liability under sec. 1983; and second, whether the plaintiff has sufficiently alleged that the United States owed her son a duty of care for purposes of her FTCA claim. We consider each below.

### A. *Municipal Liability Under Section 1983*

Determining whether the County's policy can serve as the basis for sec. 1983 liability is somewhat complicated by the

fact that this precise issue was previously answered affirmatively by Magistrate Bucklo and Judge Bua.[1] In a motion to dismiss the plaintiff's original complaint, the County argued that under *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion), the plaintiff was obligated to allege the existence of more than a single incident of unconstitutional conduct because the County's policy is not itself unconstitutional; and since the plaintiff had not done so, the complaint should be dismissed.

The magistrate was unpersuaded; she thought the County's argument rested on a "misunderstanding" of the nature of the County's policy.

> [I]n certain circumstances, it might not violate a victim's rights to prevent private attempts to rescue him. However, the municipal policy alleged by the plaintiff apparently forbade all private rescue attempts under any circumstances; it is not alleged that police officers were permitted to allow such rescue attempts in exigent circumstances, where time was critical and the danger to the rescuers was not great. Johnson allegedly acted in conformity with the municipal policy when he prevented rescue attempts for twenty minutes until municipal rescuers could arrive. When a [sec.] 1983 claim against a municipality is based on such an affirmative policy that requires employee wrongdoing rather than on an implied policy of acquiescence in employee misconduct, [a plaintiff need only allege a single incident of wrongdoing].

> [A]ccording to the complaint Ross' injury did not occur because of independent misconduct of Johnson, but because Johnson adhered to the county's policies. Under such circumstances the allegation

of municipal policy and of injury to the plaintiff's decedent is sufficient to state a cause of action.

*Ross v. United States*, No. 86 C 5882, Magistrate's Report and Recommendation at 8–9 (N.D.Ill. Mar. 12, 1987).

Under the magistrate's reasoning, then, *Tuttle*'s enhanced burden requirement does not apply to an "affirmative" policy that causes a deprivation of a constitutionally protected interest, even if the policy itself is not unconstitutional. *See also Salkin v. Washington*, 628 F.Supp. 138 (N.D. Ill.1986), cited by the magistrate, which observed that "[t]he overriding concern of the Justices in [*Tuttle*] was with the problem of establishing an affirmative causal link between the City's conduct and the plaintiff's injury, when a single incident is the only evidence of * * * an amorphous policy [such as inadequate training]." *Id.* at 141 n. 2. We find much of the magistrate's analysis questionable.

Initially, we disagree with the magistrate's conclusion that the County's policy "apparently forbade all private rescue attempts under any circumstances." The County's policy, as alleged by the plaintiff in her amended complaint, is

> to forbid and prevent any civilian, *not explicitly authorized to do so*, from attempting to rescue a person in danger of drowning, and to continue to restrain and prevent such rescue until the arrival of divers from the Waukegan Fire Department, even though the proximate result of such conduct would or could be the serious injury or death of the drowning victim.

Amended Compl. para. 29 (emphasis supplied). Clearly, the policy does not forbid *all* civilian rescue attempts, only attempts by unauthorized civilians. What this means, however, is unclear because we are

---

**1.** Based on this previous ruling, the plaintiff vigorously contends that we are foreclosed from reconsidering it now by the law of the case doctrine. We do not believe, however, that the law of the case doctrine has the teeth that the plaintiff suggests; it has more bark than bite. In reconsidering a previous interlocutory ruling by another district judge, we are constrained only as a matter of comity, not power. *Champaign–Urbana News v. J.L. Cummins*, 632 F.2d

680, 683 (7th Cir.1980). If convinced the law of the case is erroneous, "[t]he only sensible thing for a trial court to do is to set itself right as soon as possible * * *." *Id.* As will become clear in the text, we are convinced the law of this case is erroneous, and at this stage of the proceedings we believe the sensible step to take is to correct it. *See generally,* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* sec. 4478 (1981 & 1987 Supp.).

not told how civilians become authorized to attempt rescues; and that fact could be critical. For example, if a police officer (such as Johnson) can authorize a civilian to attempt the rescue of a drowning victim at the time and place of the incident, then the plaintiff's claim collapses. In that event, Johnson might be liable for breaking with the policy or for improperly executing it, but the County would not be liable. *See Powe v. City of Chicago,* 664 F.2d 639, 649 (7th Cir.1981). But we do not know and we cannot resolve factual issues against the plaintiff. Enough of the facts, it is time to examine the law.

■ Contrary to the magistrate's conclusion, we believe that where a plaintiff seeks to establish municipal liability relying on a policy which itself is not unconstitutional the plaintiff must allege the existence of more than a single incident of wrongdoing, regardless of whether the policy is "affirmative" or "negative." *Tuttle* held that "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, *and* the causal connection between the 'policy' and the constitutional deprivation." 471 U.S. at 824, 105 S.Ct. at 2436 (plurality opinion). *Tuttle* recognizes no distinction between affirmative and negative policies; rather, it requires an increased showing in *every case* in which the plaintiff seeks to establish municipal liability on the basis of a policy which itself is not unconstitutional. This showing is required not only for the purpose of establishing causation, but also fault; and the two are not coterminous. One can cause injury and yet be quite innocent of fault. Thus, even if a single incident of wrongdoing is sufficient to show causation, *Tuttle* teaches that it is not necessarily enough to show fault. Here, for reasons we consider in detail later, *see infra* at 980–81, we believe the County's policy itself is not unconstitutional, and the plaintiff has pleaded only a single incident of constitutional deprivation. And that's not enough. *See also Kirkpatrick v. City of Los Angeles,* 803 F.2d 485 (9th Cir.1986).

■ This case also might be viewed as presenting the issue of whether a municipality can ever be held liable under sec. 1983 on the basis of a policy which is not itself unconstitutional. In the magistrate's view, the answer is clearly "yes." Our view differs. Based on sec. 1983's language, its legislative history, and its underlying purposes, we do not believe that a "person"—even a municipality—is subject to sec. 1983 liability unless he personally violates the fourteenth amendment.

■ Section 1983 provides a cause of action to individuals whose fourteenth amendment rights are violated by persons acting under color of state law. It "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Tuttle,* 471 U.S. at 816, 105 S.Ct. at 2432. In any sec. 1983 case involving the fourteenth amendment, the plaintiff must plead and prove two elements: first, that the defendant owed the plaintiff a fourteenth amendment duty of care; and second, that the defendant breached the duty and caused harm to the plaintiff.

■ It is critical to note that the plaintiff must make this showing as to *each* defendant: sec. 1983 was intended to provide a cause of action only against those who themselves violate the fourteenth amendment. Otherwise supervisors and municipalities could be held liable under the doctrine of *respondeat superior,* a result which the Court expressly rejected in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The issue thus becomes: in what manner does a municipality "personally" violate the fourteenth amendment? The answer, we believe, is by adopting an unconstitutional policy (or custom), or by implementing a facially constitutional policy in an impermissible manner.

The Supreme Court has suggested this on at least one occasion. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), held that policies for handling criminal appeals by public defenders and allowing public defenders to

withdraw from frivolous criminal appeals could not serve as the basis for municipal liability under sec. 1983 because neither was a "constitutionally forbidden rule or procedure." It was apparently not enough that the execution of a constitutionally permissible policy might lead to the deprivation of a constitutionally protected interest.

In *Tuttle*, however, the plurality expressly reserved the issue "whether a policy that itself is not unconstitutional * * * can ever meet the 'policy' requirement of *Monell*." 471 U.S. at 824 n. 7, 105 S.Ct. at 2436 n. 7. But in *City of St. Louis v. Praprotnik*, —— U.S. ——, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988), Justice O'Connor, writing for a plurality, noted that "[t]he city cannot be held liable under [sec.] 1983 unless respondent proved the existence of an unconstitutional policy." Justice Brennan, however, writing separately, was quick to point out that the court did not decide this issue. *Praprotnik*, 108 S.Ct. at 936; *see also, Tuttle*, 471 U.S. at 833 n. 8, 105 S.Ct. at 2441 n. 8. And for good reason: he has a different understanding of municipal liability. Under his approach, a municipality may be held liable under sec. 1983 if, through the execution of a policy or custom, a person is deprived of a constitutionally protected interest; it is not necessary that the municipality itself violate the plaintiff's constitutional rights; it is sufficient if the policy or custom causes the unconstitutional acts.

Our Court of Appeals has sent mixed signals. In *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir.1981), the court, in dicta, indicated that:

> [u]nder *Monell*, the policy of the municipality is not to be examined, in a vacuum, for unconstitutionality. Rather, * * * the crucial question is whether the unconstitutional acts complained of were *caused* by a policy or custom of the municipality.

According to *Powe* and Justice Brennan, causation is not only a necessary but also a sufficient condition for municipal liability

under sec. 1983. But *Powe*'s authority is vitiated by the fact that it preceded *Dodson*.

Shortly after *Dodson* the Seventh Circuit decided *Iskander v. Village of Forest Park*, 690 F.2d 126 (7th Cir.1982). In *Iskander*, a store detective employed by Zayre detained the plaintiff for alleged shoplifting, and called the Forest Park Police Department. The police department sent an officer to the scene who arrested the plaintiff on a charge of misdemeanor theft, and took her to the police station, where she was booked, strip searched, and kept in custody until she could post bond. The plaintiff brought a sec. 1983 action against both Zayre and the Village; and she prevailed against both at trial.

The Seventh Circuit reversed on appeal. Citing *Dodson*, the court held that to subject the defendants to liability the plaintiff had to establish the existence of an "impermissible policy or a constitutionally forbidden rule or procedure" which caused the constitutional violation. *Id.* at 128. Regarding Zayre, the plaintiff alleged that the store detective "was acting in accord with Zayre's operating procedures" when he detained her without probable cause. The court held that this policy could not serve as the basis for municipal liability because it was not itself unconstitutional. *Id.* at 129. The court reached the same conclusion for the same reason regarding the Village's policy of dispatching police officers to the scene of alleged shoplifting incidents.[2]

■ When all is said and done the question is probably still an open one. We are of the view that a plaintiff can recover against a municipality only when his injury is caused by (1) an unconstitutional course of action deliberately chosen by a policy-making official, (2) the acts of a municipal employee who implements an unconstitutional policy or custom, or (3) the implementation of a constitutional policy in an impermissible manner that is attributable to the municipality. This approach is consistent

---

**2.** The court did remand the case to determine whether the police department had a custom of conducting strip searches in a room which of-

fered insufficient privacy, thus violating the fourth amendment. *Iskander*, 690 F.2d at 129–30.

with sec. 1983's language, its legislative history, and its underlying policies. *See generally* Nahmod, *Constitutional Accountability in Section 1983 Litigation*, 68 Iowa L.Rev. 1 (1982). For example, the Court has repeatedly stated that sec. 1983 creates no substantive rights, merely remedies for violations of rights established elsewhere. *See, e.g., Tuttle*, 471 U.S. at 816, 105 S.Ct. at 2432; *Baker v. McCollan*, 443 U.S. 137, 140, 144 n. 3, 99 S.Ct. 2689, 2692 n. 3 (1979); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–618, 99 S.Ct. 1905, 1915–1916, 60 L.Ed.2d 508 (1979). The approach taken by Justice Brennan, and utilized by the magistrate here, however, does create a new substantive right on behalf of persons whose injuries result from the implementation of municipal policies and customs that are not unconstitutional. Since the municipality has done nothing wrong (constitutionally speaking) where it adopts a policy that itself is not unconstitutional, it follows that the *municipality* has not violated the fourteenth amendment; and absent its own violation the municipality can be made to pay only for another's wrongdoing, thus resurrecting the doctrine of *respondeat superior* in the sec. 1983 context.

Indeed, if wrongdoing is not the basis of liability under sec. 1983, then it would appear that cause-in-fact is; and if that is so, then it is difficult to see why a municipality is not liable for the acts of its employees under the doctrine of *respondeat superior;* after all, the violation would not have occurred "but for" the fact that the municipality employed the defendant. It would certainly open a municipality to liability for negligently adopting a policy which caused the deprivation of a constitutionally protected interest; but we know from *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed. 2d 677 (1986), that negligence is not enough to state a sec. 1983 claim under the fourteenth amendment. Personal involvement is a necessary condition of fault; and with-

out fault there is no constitutional violation, and therefore no liability.

Justice Brennan's causation theory is also inconsistent with sec. 1983's legislative history, which indicates that a defendant must personally violate the fourteenth amendment before being subjected to sec. 1983 liability. *See, e.g.,* Cong.Globe, 42d Cong., 1st Sess. 569 (sec. 1983 "reenact[s] the Constitution", remarks of Sen. Edmunds); *see also id.* at 81 (remarks of Rep. Bingham) and 216 (remarks of Sen. Thurman). Conversely, it is clear that restricting liability to those who personally violate the plaintiff's rights will further sec. 1983's purpose, which is to enforce the fourteenth amendment.[3]

Another reason for rejecting the causation approach is that it undermines the distinction between the sec. 1983 prima facie case and the affirmative defense of qualified immunity. Officials sued in their individual capacities can avoid liability for their unconstitutional acts under the doctrine of qualified immunity. To overcome this defense, a plaintiff must establish that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, to some extent the defense centers on reasonableness; so does the causation approach (assuming it contains a proximate cause component in addition to cause in fact), which would allow recovery for negligence and thus necessitate an inquiry into the reasonableness of the official's conduct.

Finally, it is true that sec. 1983 speaks to situations in which a person "subjects" (the active voice) or "causes to be subjected" (the passive voice) another person to the deprivation of his constitutionally protected rights; the passive language clearly encompasses circumstances in which one person causes a constitutional deprivation through an intervening actor. But the "causes to be subjected" language does not entitle a plaintiff to recover from one who

---

**3.** The title of sec. 1983, as enacted, was: "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for Other Purposes." 17 Stat. 13 (1871).

himself has committed no constitutional violation; rather the defendant's conduct must itself be unconstitutional *and* the cause of the plaintiff's constitutional deprivation for the plaintiff to recover. Any other interpretation would permit a plaintiff to prevail against a defendant who himself has not violated the Constitution. Thus, our reading of sec. 1983 is consistent with its language and its intended purposes; the causation interpretation is not.

■ Having concluded that a municipality can be held liable under sec. 1983 only for its own constitutional violations, the sole remaining question is whether the County's policy is itself unconstitutional. Here, the County could have decided to permit all civilian rescue attempts to gain the benefit of increased attempts, but at the risk of increased casualties; or it might have forbidden all civilian rescue attempts to minimize the potential number of injuries, but at the cost of increased risk; or it might have prohibited only rescue attempts by unauthorized civilians to maximize rescue attempts and also minimize injuries. These are all rational policies. Where the adoption of a policy involves a choice without a single right answer, the choice is "one for the political rather than the judicial branches." *Archie v. City of Racine*, 847 F.2d 1211, 1224 (7th Cir.1988). Even if we could fashion a policy that better achieves the purposes intended by the County's policy we do not sit as a Solomonic council empowered to revise the decisions of the political branches because they are unwise; we review them only to ensure

that they conform to the constraints imposed by the Constitution.

■ Given the County's policy, it certainly was foreseeable that some injury might result. But that a policy may foreseeably cause an injury is not enough to make it unconstitutional. Policy-making would be a hazardous business if it did. *Archie* holds that a State actor is liable in the constitutional sense only if his conduct is reckless or intentional. It is simply beyond the realm of reasonable speculation to conclude that the County's policy was the product of reckless indifference to the value of life or was designed to cause harm. The County made a hard choice. In so doing it may not have made the best choice, but the Constitution does not require the best choice; it requires only that governmental choice not be arbitrary or designed to harm. The County's policy is neither; therefore, the plaintiff's sec. 1983 claim against the County[4] is dismissed.

## B. *The FTCA Claim*

■ The plaintiff's other federal claim arises under the FTCA, 28 U.S.C. secs. 2671–80. The United States Army Corps of Engineers designed and constructed the North Breakwater and is responsible for its maintenance and repair. The plaintiff alleges that the Corps acted negligently in a variety of ways. We need not address the specific allegations of negligence, however, because we are convinced that the United States did not owe the decedent a duty of care.[5]

---

4. We also dismiss the sec. 1983 claims against the remaining defendants. The claims against Johnson and Babcox in their official capacities are dismissed because they are in substance suits against the County. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed. 2d 114 (1985). The claims against the City of Waukegan, Waukegan Fire Department and Paramedics and Waukegan Lifeguards center on the plaintiff's allegation that the City, by virtue of entering into an Intergovernmental Agreement with the County, adopted the County's policy. Since we have concluded that the County's policy cannot form the basis of a sec. 1983 claim, it follows that the City defendants are not liable either.

5. The United States initially contends that we lack subject matter jurisdiction over various portions of the plaintiff's amended complaint because they fall within the "discretionary function" exception to FTCA jurisdiction. *See* 28 U.S.C. secs. 1346(b), 2680(a). This exception, most recently considered by the Supreme Court in *Berkovitz by Berkovitz v. United States*, —— U.S. ——, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988), deprives the federal district courts of jurisdiction over agency actions involving the "permissible exercise of policy judgment." Although simple in theory, the exception frequently proves difficult in application; the distinction between discretionary and non-discretionary action is not one that lends itself to mechanical application. Given the difficulties in application, we prefer to dispose of the plaintiff's FTCA

The general rule under Illinois law [6] is that a landowner has no duty to take special precautions to insure the safety of children. *Kahn v. James Burton Co.*, 5 Ill.2d 614, 126 N.E.2d 836, 841 (1955). An exception obtains, however, where the owner "knows or should know that children frequent the premises *and* if the cause of the child's injury was a *dangerous* condition on the premises." *Corcoran v. Village of Libertyville*, 73 Ill.2d 316, 22 Ill. Dec. 701, 704, 383 N.E.2d 177, 180 (1978) (emphasis in original). If both aspects are present, harm to the child is considered reasonably foreseeable, and a duty arises to remedy the condition.

There is no question that the United States knew the breakwater was frequented by children, *see* Amend. Complaint para. 12; the dispute thus revolves on whether the breakwater, on August 11, 1985, was a dangerous condition within the meaning of *Kahn* and its progeny. A dangerous condition is one which "is likely to cause injury to children generally who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks." *Cope v. Doe*, 102 Ill.2d 278, 80 Ill.Dec. 40, 44, 464 N.E.2d 1023, 1027 (1984). Conversely, however, if the condition presents obvious risks that children are expected to understand and avoid, then no duty arises to remedy it. If a risk is obvious and a child reasonably can be expected to appreciate it, then the child should avoid the risk, not take it; there is no *foreseeable* risk of harm; and absent a foreseeable risk of harm, there is no fault (at least on the defendant's part) for the resulting injury; and without fault (at least in negligence claims) there is no liability. *See* Polelle, *The Foreseeability Concept and Strict Products Liability: The Odd Couple of Tort Law*, 8 Rut.–Cam. L.J. 101, 102–03, 116 (1976) (the concept of fault filtered into negligence law "through the conduit of foreseeability"); Morris, *Duty, Negligence and Causation*, 101 U.Pa.L. Rev. 189, 221 (1952) ("Deeply rooted in our

culture is the postulate that a wrongdoer should pay for the wrong he does. * * * An injury not caused by a wrongful act is an injury for which the wrongdoer has no legal responsibility [in a claim for negligence]").

We are of the view that under Illinois law the risk of drowning presented by the steeply sloped and slippery breakwater was obvious; and that this risk was one that children generally are expected to understand and avoid. Therefore, the United States owed the decedent no duty to remedy the condition, and, by implication, the plaintiff has no cause of action under the FTCA.

The plaintiff's arguments to the contrary are unconvincing. For instance, the plaintiff contends that under Illinois law she need only allege facts showing that the condition exposes children to risks greater than those encountered in their daily lives. She claims she has satisfied this pleading onus by alleging that the breakwater was dangerous because it was slippery and slanted, and that the danger was enhanced by large cracks in the concrete and the pronounced pitch of the sloped angle. At most, the plaintiff points to the fact that the risk of drowning ordinarily presented by a breakwater was increased by the presence of other factors, which taken in combination render the breakwater a "dangerous condition." There is ample support for this general proposition, *see, e.g., Scarano by Scarano v. Town of Ela*, 166 Ill.App.3d 184, 117 Ill.Dec. 72, 520 N.E.2d 62 (2d Dist.1988); *Restatement (Second) of Torts* sec. 339 comment j (1965), but it is of no help to the plaintiff. The presence of "other factors" transforms a non-dangerous condition into a dangerous one only when it creates a new risk or conceals a pre-existing risk such that children generally would not be expected to recognize and avoid it. *See, e.g., Pasierb v. Hanover Park Park District*, 103 Ill.App. 3d 806, 59 Ill.Dec. 461, 431 N.E.2d 1218 (1st Dist.1981) (a creek, ordinarily not a dangerous condition, became dangerous when it

---

claim on another basis: namely, that the United States did not owe the plaintiff's decedent a duty of care.

**6.** Illinois law governs the substantive issues in Count II because the accident occurred in Illinois. *See* 28 U.S.C. sec. 1346(b).

froze and was covered with a layer of snow, making it impossible to discern the creek's location). Not so here. Even figuring the "other factors" into the equation, it fails to add up to a legal duty.

▮ A host of Illinois cases hold that children generally are expected to understand and avoid the risk of drowning when they are near bodies of water. *See, e.g., Cope v. Doe,* 102 Ill.2d 278, 80 Ill.Dec. 40, 464 N.E.2d 1023 (1984); *Christon v. Kankakee Valley Boat Club,* 152 Ill.App.3d 202, 105 Ill.Dec. 394, 504 N.E.2d 263 (3d Dist.1984); *Prince v. Wolf,* 93 Ill.App.3d 505, 48 Ill.Dec. 947, 417 N.E.2d 679 (1st Dist.1981). The ability to comprehend and avoid that risk is not lost when the body of water is alongside a slippery surface which slopes dramatically toward the water; indeed the risk becomes more apparent, more obvious. *See Old Second National Bank, Aurora v. Aurora Township,* 156 Ill.App. 3d 62, 109 Ill.Dec. 31, 36–37, 509 N.E.2d 692, 697–98 (2d Dist.1987) (combination of water current and flooded conditions presented greater risk of drowning to children, the combination could only have made the risk more, not less, obvious to children of an age to be left at large).

The plaintiff also suggests that the condition was "dangerous" because children who approach an area open to the public, such as the breakwater, "naturally assume[ ] that it will not be so slippery as to be dangerous * * *." Plaintiff's Resp. at 12. True though this might be, our inquiry does not look to the assumptions a child makes; rather, we focus on whether a child, by reason of his age and immaturity, "would not be expected to comprehend and avoid the attendant risks." *Cope,* 80 Ill. Dec. at 44, 464 N.E.2d at 1027. Children generally—and a twelve-year old in particular—are capable of recognizing and avoiding the risk of drowning presented by a steeply sloped, slippery surface in the midst of Lake Michigan. The plaintiff's FTCA claim against the United States is dismissed.[7]

### III. CONCLUSION

Having determined that the plaintiff has no valid federal cause of action against any of the defendants, we need only address the status of the plaintiff's pendent state law claims. "[W]hen a district court dismisses all of the plaintiff's federal claims, it ordinarily should dismiss any pendent state claims as well." *Argento v. Village of Melrose Park,* 838 F.2d 1483, 1491 (7th Cir.1988). But this may not be an ordinary case. In light of the procedural history of this case, we are reluctant to deprive the plaintiff of the opportunity to persuade us to retain jurisdiction of the state law claims. Both parties shall submit memoranda (not to exceed 15 pages) on this issue[8] within 35 days of the entry of this order.

7. The plaintiff cites *Davis v. United States,* 716 F.2d 418 (7th Cir.1983), in her Response, apparently for the proposition that the United States acted negligently. If so, then it addresses an element of the plaintiff's cause of action (breach of duty of care) that we find it unnecessary to reach (since there is no duty there can be no breach). At all events, *Davis* involved a plaintiff who struck his head on subsurface rocks in a lake owned and operated by the United States, breaking his neck and ending up a quadriplegic.

The "dangerous condition" in *Davis* was not obvious (in fact the court expressly recognized as much, *id.* at 423), as is the one involved here.

8. We have not considered whether the plaintiff's state law claims are still viable given our ruling that she has no claim under the FTCA (which itself depends on Illinois law). We trust the parties also will address this issue in their memoranda.